IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOHNNY LEWIS HOLMES, III, | ) | |
| | ) | |
| Plaintiff, | ) | 15 C 8594 |
| | ) | |
| v. | ) | Judge John Z. Lee |
| | ) | |
| TROOPER DABROWSKI, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Johnny Holmes has sued Illinois State Troopers John Dabrowski and Eduardo Reyes, bringing claims for false arrest under 42 U.S.C. § 1983, as well as malicious prosecution under Illinois law, arising out of an incident on April 28, 2013. Dabrowski and Reyes have moved for summary judgment [83] as to Holmes's claims, arguing that they are time-barred, that they had probable cause to arrest Holmes on April 28, and that they are entitled to qualified immunity. For the reasons that follow, the Court grants the Defendants' motion and dismisses the claims.

**Background**[1]

**I.    The Altercation**

On April 28, 2013, Holmes was driving southbound on I-294 with his then-girlfriend, Delana C. Hughes. Defs.' L.R. 56.1 Statement of Facts ("DSOF") ¶ 3, ECF No. 85. An argument erupted regarding Hughes's cellphone. *Id.* ¶ 4. As it

---

[1]    The following facts are undisputed or have been deemed admitted, unless otherwise noted.

became more heated, Holmes grabbed Hughes's cellphone and threw it out of the car window. *Id.* ¶ 5. Hughes responded by punching Holmes in the face and arms. *Id.* ¶ 7.

To restrain Hughes, Holmes grabbed her by the arm and pinned her to the dashboard and passenger-side window. *Id.* ¶ 8. Fearing an accident, Holmes pulled the car over on the shoulder of I-294. *Id.* ¶ 9. Once the car came to a stop, Hughes threw Holmes's wallet out of the car; not to be outdone, Holmes threw Hughes's purse out of the car. *Id.* ¶ 10.

At that point, Hughes got out of the car and began walking toward the nearby toll plaza, while Holmes stayed in the car. *Id.* ¶ 11. Holmes and Hughes each attempted to call 911 to request police assistance. *Id.* ¶ 12. Holmes then exited the car and followed Hughes at a distance while he spoke to the 911 dispatcher. *Id.* ¶ 13.

Dabrowski and Reyes both heard the dispatch call over the radio and proceeded to respond. *Id.* ¶ 18–19. Within approximately two minutes of Holmes's call, the two troopers arrived in separate police cars. *Id.* ¶ 14.

## II. The Officers' Interactions with Hughes

Once they arrived on scene, Dabrowski and Reyes observed Hughes crying, and Dabrowski noticed that she appeared upset and frightened. *Id.* ¶¶ 21, 30. Both officers proceeded to speak with her. *Id.* ¶ 15. Hughes told them that she and Holmes had got into an argument about her use of her cellphone, *id.* ¶ 29; that Holmes threw her cellphone out of the car window, *id.*; that she subsequently threw

2

his wallet out of the window, *id*.; and that he had physically hit her, *id*. After speaking with the officers, Hughes entered one of the police vehicles, while the officers handcuffed Holmes before questioning him. *Id*. ¶¶ 16, 26.

Later, en route to the police station, Hughes told Reyes that Holmes had hit her in the head. *Id*. ¶ 32. At the station, Hughes added that Holmes had grabbed her hair, yanked her head down, pushed her into the door, and choked her with a rosary. *Id*. ¶¶ 42–43, 47, 50–51. She admitted that when he pushed her head down, she hit him in the head and then threw his wallet out of the car. *Id*. ¶¶ 43–44. In a subsequent written statement, Hughes stated that this was the fourth domestic disturbance incident between her and Holmes. *Id*. ¶ 56.

### III. The Officers' Interactions with Holmes

When they first arrived at the scene, both Dabrowski and Reyes observed that Holmes appeared angry and threatening, his muscles were tight, and he appeared "ready to fight." *Id*. ¶¶ 22, 30. After seeing this, Dabrowski believed that his safety was at risk. *Id*. ¶ 23. The officers also noticed that Holmes's shirt was ripped and that he had a cut on his lip and scratches on his chest. *Id*. ¶ 24.

Dabrowski handcuffed Holmes and started to question him. *Id*. ¶ 26. In response, Holmes stated that Hughes had physically attacked him in the car after he had taken her phone. *Id*. ¶ 26. Holmes also noted that he and Hughes had been involved in a domestic altercation in 2011, which led to Holmes' arrest and conviction for domestic battery. *Id*. ¶ 28. Nevertheless, Holmes maintained that he had not struck Hughes during their altercation on the expressway. *Id*. ¶ 36.

3

The officers also questioned Holmes at the police station. *Id.* ¶ 33. There, he told them that after he had taken Hughes's cellphone, she jumped into his seat and began striking his face and arm. *Id.* ¶ 34. He maintained that he never struck Hughes or pulled her hair at any point during the altercation. *Id.* ¶ 36. He acknowledged, however, that he pinned Hughes to the dashboard when she began attacking him in the car so that he could maintain control of the vehicle on the highway. *Id.* ¶ 35.

## IV. The Witness and Subsequent Developments

After interviewing Holmes and Hughes, Dabrowski contacted a witness to the incident, Anne M. Larmon. *Id.* ¶ 58. Larmon stated that she observed part of the altercation between Holmes and Hughes. *Id.* While traveling northbound on I-294 near where the altercation occurred, Larmon observed a black male holding a black female by both wrists outside of a vehicle. *Id.* ¶ 59. Larmon further stated that the female appeared to be resisting and trying to get away. *Id.* ¶ 60.

After reviewing the witness statement, and the statements from Hughes and Holmes, Dabrowski concluded that Holmes was the primary aggressor and that the altercation started after Holmes grabbed Hughes's phone. *Id.* ¶ 61. He also concluded that Holmes's injuries appeared to have been inflicted by Hughes while she was acting in self-defense, and that Hughes was more credible than Holmes. *Id.* ¶ 62.

A felony charge of aggravated battery was eventually approved against Holmes. *Id.* ¶ 63. The bench trial for that charge took place on November 5, 2013. *Id.* ¶ 71. Holmes was found not guilty. *Id.* ¶ 72.

## V. The Instant Action

Holmes subsequently filed the instant action against Dabrowski and Reyes, alleging a § 1983 claim of false arrest and a state law malicious prosecution claim. Am. Compl., ECF No. 22. The Defendants now move for summary judgment as to those claims. Mot. for Summ. J, ECF No. 83; Mem. in Supp. of Summ. J., ECF No. 84.

## Legal Standard

Summary judgment is appropriate when the movant shows no genuine dispute exists as to any material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In determining whether summary judgment is appropriate, the Court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Majors v. Gen. Elec. Co.*, 714 F.3d 527, 532 (7th Cir. 2013).

## I. False Arrest (Count I)

### A. Holmes's false-arrest claim is untimely.

In Illinois, the statute of limitations for § 1983 claims is two years. *See Kelly v. City of Chicago*, 4 F.3d 509, 511 (7th Cir. 1993). But while state law determines

the length of the limitations period for a § 1983 claim, federal law determines the date of accrual of the cause of action. *Id.*

"False arrest claims under § 1983 accrue when the plaintiff became detained pursuant to the legal process such as when a magistrate judge bounds over the defendant or when arraignment occurs." *Stoller v. Costco Wholesale Corp.*, No. 19 C 140, 2020 WL 247459, at *5 (N.D. Ill. Jan. 16, 2020) (citing *Wallace v. Kato*, 549 U.S. 384, 389–90 (2007)); *see also Regains v. City of Chicago*, 918 F.3d 529, 533–34 (7th Cir. 2019); *McDonough v. Smith*, 139 S. Ct. 2149, 2159 (2019).

Holmes does not dispute that he was detained pursuant to legal process more than two years prior to the date he filed the instant action in September 2015. *See* Mem. in Opp. to Summ. J. at 3–5, ECF No. 90. Nor does he contend that equitable tolling is warranted. Holmes's false-arrest claim is thus time-barred. *See Caudle v. Illinois*, No. 18 C 50230, 2019 WL 1522641, at *3 (N.D. Ill. Apr. 5, 2019).

For his part, Holmes cites *Manuel v. City of Joliet*, 903 F.3d 667 (7th Cir. 2018) ("*Manuel II*"), to argue that his claim accrued only once he was released following his trial. *See* Mem. in Opp. to Summ. J. at 3–5. But *Manuel II* dealt specifically with an unlawful-detention claim alleging that the judge's probable-cause determination was tainted by fabricated evidence. *See* 903 F.3d at 670. Holmes's claim, on the other hand, is a standard false-arrest claim; Holmes contends that he was "restrained or arrested" by Dabrowski and Reyes even though they lacked "reasonable grounds to believe that" he had committed an offense. *Glickman v. Vill. of Morton Grove*, No. 18 C 4931, 2019 WL 1754091, at *10 (N.D.

6

Ill. Apr. 19, 2019); *see also Brooks v. City of Chicago*, 564 F.3d 830, 832 (7th Cir. 2009). And the Supreme Court has recently reaffirmed that false-arrest claims accrue "as soon as the arrestee 'becomes detained pursuant to legal process,' not when he is ultimately released." *McDonough*, 139 S. Ct. at 2159 (quoting *Wallace v. Kato*, 549 US. 384, 397 (2007)).

The Court thus grants summary judgment in favor of the Defendants as to Holmes's false-arrest claim.

### B. The Defendants are entitled to qualified immunity

Even assuming, *arguendo*, that Holmes's claim is not time-barred, the Defendants are entitled to qualified immunity as to that claim.

#### 1. Standard

Qualified immunity protects government officials from liability for civil damages so long as their actions do not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Figgs v. Dawson*, 829 F.3d 895, 905 (7th Cir. 2016) (citation omitted). Therefore, to succeed, Holmes must show not only that his arrest was unlawful, but also that the unlawfulness of the arrest was clearly established at the time it occurred. Because, as described below, Holmes cannot make the latter showing, we need not consider whether the arrest in fact violated the Fourth Amendment. *See Hernandez v. Sheahan*, 711 F.3d 816, 817 (7th Cir. 2013) ("Courts may exercise discretion in deciding which question to address first [when undertaking a qualified-immunity analysis].")

7

"The 'demanding standard' that the law be 'clearly established' for liability to attach 'protects all but the plainly incompetent or those who knowingly violate the law.'" *Torry v. City of Chicago*, 932 F.3d 579, 587 (7th Cir. 2019) (quoting *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018)). For the law to be "clearly established," existing precedent must have placed the unlawfulness of the conduct "beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). "It is usually necessary to identify an instance in which 'an officer acting under similar circumstances . . . was held to have violated the Fourth Amendment,' though in the rare 'obvious case' the violation may be sufficiently clear 'even though existing precedent does not address similar circumstances.'" *Torry*, 932 F.3d at 587 (quoting *Wesby*, 138 S. Ct. at 590).

"The existence of probable cause to arrest . . . is an absolute defense to any § 1983 claim against a police officer for false arrest." *Abbott v. Sangamon Cnty., Ill.*, 705 F.3d 706, 713–14 (7th Cir. 2013). Qualified immunity is available if there is "arguable probable cause." *Muhammad v. Pearson*, 900 F.3d 898, 908 (7th Cir. 2018).

### 2. Analysis

Some undisputed facts bear repeating. First, when Dabrowski and Reyes arrived at the scene of the fight, Hughes appeared frightened and upset, whereas Holmes appeared angry and threatening. DSOF ¶¶ 21, 22, 30; *see Bruce v. Guernsey*, 777 F.3d 872, 879 (7th Cir. 2015) (noting that, "[w]hen determining

8

whether arguable probable cause exists, we must take into consideration the particular circumstances facing the officer," including a suspect's demeanor).

Second, not only did Hughes tell Dabrowski and Reyes that Holmes had been the initial aggressor, DSOF ¶ 29, but a neutral witness offered an account that helped corroborate Hughes's version of the events, *id.* ¶¶ 58–60. *See Woods v. City of Chicago*, 234 F.3d 979, 996 (7th Cir. 2003) ("[W]e have consistently held that an identification from a *single*, credible victim or eyewitness can provide the basis for probable cause." (emphasis added)). And the Court is not persuaded that the officers could not have reasonably relied on the witness's account merely because she may have been traveling fifty-five miles per hour when she made her observation, Pl.'s L.R. 56.1 Statement of Additional Facts ("PSOF") ¶ 2, ECF No. 91. *See Steen v. Myers*, 486 F.3d 1017, 1020 (7th Cir. 2007) (describing, with approval, the account of an eyewitness who made her observation while driving on the highway).

Third, Dabrowski and Reyes were aware that Holmes had once been convicted of domestic battery for attacking Hughes, DSOF ¶ 28. *See United States v. Burnside*, No. 7-CR-10110, 2008 WL 11445457, at *3 (C.D. Ill. July 1, 2008) (finding that police officer had probable cause to arrest defendant for drug trafficking in part because of defendant's previous convictions for manufacture or delivery of drugs); *cf. United States v. Betro*, No. 4-CR-064-S, 2004 WL 1629552, at *4 (W.D. Wis. July 16, 2004) ("A suspect's previous conviction of similar crimes or other 'propensity'

9

evidence tends to support a warrant to search for new evidence of such crimes." (citing *United States v. Angle*, 234 F.3d 326, 334 (7th Cir. 2000))).

These undisputed facts certainly do not represent the "rare obvious case" where qualified immunity should be denied even in the absence of a case on point. *Wesby*, 138 S. Ct. at 590. To this point, the Court disagrees that probable cause to arrest Holmes was defeated by the fact that Holmes—but not Hughes—had visible injuries when the Officers arrived at the scene of the fight, DSOF ¶ 24. There were, as noted above, compelling reasons to believe that Holmes was the primary aggressor, and it was not unreasonable to surmise that Hughes scratched and otherwise struck Holmes while acting in self-defense. *See, e.g.*, *Hoskins v. City of Milwaukee*, No. 3 C 334, 2006 WL 2546806, at *5 (E.D. Wis. Aug. 31, 2006). Moreover, though Holmes called 911 following the fight, DSOF ¶ 12, Hughes attempted to as well, *id.*, and thus this fact does not significantly sway the probable-cause analysis in either direction.

Finally, Holmes cites to no precedent that, given the facts detailed above, puts the unlawfulness of Dabrowski and Reyes's actions "beyond debate." *al-Kidd*, 563 U.S. at 741. The Officers are thus entitled to qualified immunity as to Holmes's false-arrest claim.

## II. Holmes's malicious-prosecution claim is dismissed

Since the remaining claim, malicious prosecution, is based on state law and Plaintiff's federal claim fails, the Court declines to retain jurisdiction over it and dismisses the claim without prejudice. *See* 28 U.S.C. § 1367(c); *Refined Metals Corp.*

*v. NL Indus., Inc.*, 937 F.3d 928, 935 (7th Cir. 2019) (noting presumption that if federal claims drop out before trial, district court should relinquish jurisdiction over state-law claims).

## **<u>Conclusion</u>**

For the foregoing reasons, the Court grants Defendants' motion for summary judgment.

ENTERED: 3/12/20

*/s/ John Z. Lee*

———————————————

John Z. Lee

United States District Court Judge